(73 South. 862)

No. 21742.

TUJAGUE v. COURTIADE et al.

(Jan. 15, 1917.)

*(Syllabus by the Court.)*

HUSBAND AND WIFE ☞273(1)—SURVIVOR—
"SPOLIATOR"—LIABILITY.

A surviving widow, who opens the bank box of the deceased and converts its contents to her own use, without notice to some of the forced heirs, and without an order of court and inventory, as required by law, places herself in the position of a "spoliator," and as such will be held to a strict accounting.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008, 1009, 1016–1018, 1023; Dec. Dig. ☞273(1).

For other definitions, see Words and Phrases, First and Second Series, Spoliator.]

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Suit by Miss Grace Tujague, individually and as administratrix of the estate of Bernard Tujague, against Mrs. Laurentine Courtiade, widow of Bernard Tujague, and Sylvain Tujague. Judgment for plaintiff, and defendants appeal. Affirmed.

Emile Pomes, of New Orleans, for appellants. James Barkley Rosser, Jr., of New Orleans, for appellee.

LAND, J. Bernard Tujague, a retired butcher, died in July, 1911, and thereupon his widow took possession of his bank box, with its contents, without an order of court and inventory, as required by article 557 of the Civil Code, and without notice to two of three forced heirs.

The object of the present suit, brought in the interest of the two daughters of the deceased, is to compel the widow and son of the deceased to produce the assets of the estate wrongfully converted by them, so that the same might be inventoried and administered according to law.

In answer to an interrogatory as to what property, meaning stocks, bonds, notes, and money, she had in her possession at the time of the death of her husband, the widow answered:

"At his death I had in the house $300 that I used to pay funeral and other expenses. City Railroad bonds, which were in the name of my son, were called in the company, and with the money derived therefrom I bought 68 shares of stock of the American Cities Railways."

In her answer the widow admits that said 68 shares of stock belong to the community, and later deposited the certificate with the clerk of the court.

The deceased retired from business in 1904. His account with Mr. Sidney J. Pourpart, dealer in stocks and bonds, shows that on November 11, 1903, Bernard Tujague purchased 13 4½ per cent. bonds of the New Orleans Railways for $1,000 each; that on June 2, 1905, he sold 2 of said bonds, and on December 7, 1905, purchased 3 bonds of the same kind with the proceeds of 30 shares of New Orleans Railways preferred.

The next entry on the account is of date November 27, 1908, showing the sale of 5 bonds of the New Orleans Railways 4½ per cent., and the purchase of 200 shares New Orleans Railways common.

The next entry, of date May 31, 1911, shows a sale of the same 200 shares by S. Tujague, the son, for $6,250.

The last entry, of date August 23, 1911, shortly after the death of the deceased, shows a purchase of 68 shares American Cities preferred by Mrs. Tujague for $5,661, paid out of a check for $5,750 received from her.

On June 2, 1911, the son's bank account was credited with $6,250, and on August 21, 1911, he was charged with a certified check for $5,750, which we may assume was the same check used by his mother in the said purchase of the 68 shares of stock.

By this devious transaction, shares of

stock of the cash value of $6,250 were sought to be converted by the mother and son to their own use, to the prejudice of the two daughters of the family.

On the face of the account of B. Tujague with the family broker 9 New Orleans Railways 4½ per cent. bonds were never sold by him.

After the death of the deceased, one of these bonds was removed from his bank box by his son Sylvain, under a claim of ownership.

After stating that the defendants' testimony exhibited little regard for their oaths to tell the truth, the judge a quo proceeds as follows:

"The fact that B. Tujague at his death was in possession of the $1,000 bond claimed and removed by Sylvain Tujague creates a presumption of ownership which Sylvain Tujague's uncorroborated testimony that his father had bought it for his (Sylvain's) account, with money provided by the latter, cannot overcome."

In her contradictory and confused testimony, the widow in one place admits the conversion of 4 New Orleans Railways bonds found in the bank box of the deceased.

The judge a quo, in summing up, stated that the defendants, and more particularly the widow, in opening the bank box of the deceased and appropriating its contents, without notice to plaintiff and her sister, from whom they were estranged, have placed themselves in the position of spoliators, and the burden is upon them of accounting for the 9 bonds shown to have been possessed by the deceased as late as 1908, and for the $589 profit on the transaction.

The judge a quo held that the defendants had not discharged that burden.

We are not prepared to disagree with our learned brother below on the facts of the case.

Judgment affirmed.